TICONIC WATER POWER AND MANUFACTURING COMPANY
*vs.*
JOHN D. LANG AND THOMAS S. LANG.

*Conditions of subscription to stock must be complied with to authorize an assessment.*

While Thomas S. Lang was in Europe, his father, John D. Lang, without any authority from the son to do so, subscribed for ten shares of the capital stock of the plaintiff company, in their joint names. So soon as Thomas S. Lang, after his return home, learned of this subscription, he repudiated it; but entrusted a proxy for the shares to a person interested in the enterprise, upon an agreement that they were only to be used in case certain obnoxious individuals could be excluded from the board of directors; in which event Mr. T. S. Lang promised to fill this subscription. Finding that the election of these persons as directors could not be prevented, the proxy was not used, but was destroyed, according to the understanding upon which it was obtained; *held*, that this transaction was no ratification of the subscription, and that Thomas S. Lang was not liable to be assessed upon, or to pay for the stock.

John D. Lang's subscription—made in his own and his son's name, as aforesaid—was, like that of all the original subscribers, conditioned upon $75,000 being

Ticonic Co. *v.* Lang.

taken up within a month—which time was subsequently extended to June 14, 1867. At this latter date, $75,300 had been subscribed—$75,100 by responsible parties, including that of the Langs—but several of these subscriptions (amounting to $12,000) were upon condition that "the citizens of Waterville and Winslow will take the balance." Nineteen of the shares were subscribed for by persons not resident in these towns; so that (the par of the shares being $100) there were not unconditional subscriptions to the amount of $75,000 upon the fourteenth of June, 1867, and the condition upon which one hundred and twenty of the shares had been subscribed for was not complied with. All of the responsible subscribers (for 75,100), except the Langs, paid their subscriptions without insisting upon the failure to perform the conditions; *held*, that the action of the other corporators, in waiving these conditions, could not affect the right of John D. Lang to insist upon that attached to his subscription; and that this not having been complied with, he was not bound to take the stock, nor liable to be assessed to pay for it.

ON REPORT.

ASSUMPSIT to recover four assessments of twenty-five per cent. each, upon ten shares of the stock of the plaintiff corporation, which they say the defendants subscribed for. The company was chartered by the Private and Special laws of 1866, c. 40, as amended in 1867, c. 229, with authority to manufacture various materials, and to hold real and personal estate to the amount of two millions of dollars and make improvements upon the Kennebec river, at Waterville, for that purpose. During the month of April, 1867, a considerable number of shares had been subscribed for— among them those alleged to have been taken by the Messrs. Lang —upon condition that "$75,000 be subscribed for within one month;" and to one hundred and twenty of these shares there was attached the further condition that the balance of the $75,000, (above these one hundred and twenty shares) should be taken by citizens of Waterville and Winslow. Upon the seventeenth of May, 1867, an agreement in writing was signed by many of the subscribers, including "John D. Lang, for himself and Thomas S. Lang," extending the time for fulfilling the conditions of their subscriptions to June 14, 1867. When that day arrived, seven hundred and fifty-three shares (or $75,300) were subscribed, all of which were subsequently paid for except the ten shares assessed here to Messrs. Lang, and one share each subscribed for by two other·

Ticonic Co. v. Lang.

persons. Nineteen of the shares included in the foregoing number and amount were subscribed for and taken by persons not resident in Waterville or Winslow, but those to whose subscription this condition of citizenship was attached did not insist upon it, but all subsequently paid in the full amount subscribed. for their one hundred and twenty shares.

During the spring and summer of 1867, Thomas S. Lang was in Europe. The subscription upon which it was sought to charge him was made by his father, thus—"John D. Lang for himself and Thomas S. Lang, ten shares"—no authority ever having been given by Thomas S. Lang to his father to make this subscription, nor was the latter his son's general agent.

After his return home, Thomas S. Lang was called upon by a gentleman interested in getting up the company, and requested to execute a conveyance of some land upon the river's bank to the company, which he did, but declined to allow the consideration to be applied toward this subscription, but required and received his money for it, saying he had never authorized the subscription, and then learned of it for the first time. After some conversation, however, he gave the gentleman a proxy to vote upon the shares at the ensuing annual meeting for the choice of officers, with the express understanding and promise that it should only be used in case two of the directors, who were not satisfactory to Mr. Lang, should be left off of the board ; in which event the proxy might be used, and he (T. S. Lang) would then fill his subscription. The gentleman ascertained, before the annual meeting was held, that this change of directors could not be accomplished, and therefore the proxy was destroyed without being used. The court were to render such judgment as the evidence and law required.

*E. F. Webb*, for the plaintiffs.

After Thomas S. Lang knew of the subscription, he availed himself of it by giving a proxy to change the directors to suit himself. This is a ratification. It could not concern him who

Ticonic Co. *v.* Lang.

were directors of a corporation of which he was not a member. He is bound by his attempt to derive advantage from the subscription. *Bryant* v. *Moor*, 26 Maine, 87; *P. & K. R. R. Co.* v. *Dunn*, 39 Maine, 601; *Codwise* v. *Hacker*, 1 Comst., 527.

John D. Lang is bound by his own hand. It cannot concern him that certain persons attached a condition of citizenship to their subscription which they all afterwards voluntarily waived. It was to suit their views, and had nothing to do with his subscription.

*A. Libbey*, for the defendants.

There were not valid, binding subscriptions to the amount of $75,000 on the fourteenth day of June, 1867. Whether they were subsequently made good or not, by the subscribers waiving the conditions, cannot affect Mr. John D. Lang's rights or liabilities, which are to be determined by the position of affairs on that day.

As to Mr. T. S. Lang, no liability for this stock was ever incurred by him.

DANFORTH, J. This action is brought to recover the value of ten shares in the stock of the plaintiff corporation, alleged to have been subscribed for by the defendants. The subscription book is produced, by which it appears that John D. Lang subscribed for ten shares for himself and Thomas S. Lang, the other defendant. It does not, however, appear, that John D. had any authority thus to subscribe for Thomas S., for that or any other number of shares, but directly the contrary. But it is claimed that the subscription was subsequently ratified by the action, or want of action on the part of the latter. We see no ground for ratification by a want of action, for the case shows that immediately upon receiving notice of what had been done, he repudiated it, and refused to act with the company, or to recognize his liability under it. It is true that he was at one time without his knowledge chosen a director, but, if he ever was notified of that election, he did not accept or act under it.

Nor was the giving of the proxy under the circumstances shown by the testimony any ratification. Undoubtedly if he had acted with the company, or if the stock subscribed for had, by his procurement or assent, been represented at any meeting thereof, he would be estopped from denying the binding force of the subscription. But no such action or representation is shown by the testimony in the case. It is true he did at one time sign a proxy authorizing Edward G. Meader to represent him at one of the annual meetings of the company. But this paper was signed under a special agreement that it was to be used only upon certain conditions, and the stock to be taken only in case it was used. Before the time for its use had arrived, it was found that the conditions could not be complied with, and it never, so far as appears, was even delivered to the person for whom it was intended, and the case shows affirmatively that it was not used, but destroyed according to the agreement. Thus the plaintiff fails to sustain the action upon any ground against Thomas S. Lang.

It is, however, claimed that· the action may be maintained against John D. Lang for the whole amount. If a recovery can be had against either of the defendants it must be by virtue of a contract entered into by the parties for the sale and purchase of stock. In this case the agreement to take stock contained the condition that the sum of $75,000 be subscribed by responsible parties within one month. Before the month had expired the time was extended to June 14, 1867. At the last named date the full amount had been subscribed, and no question is raised as to the responsibility of the parties. But a considerable portion of this amount was taken upon the further condition that the balance should be taked "by citizens of Waterville and Winslow." This latter condition was not fulfilled. The testimony shows that nineteen of the shares were taken by persons who were not citizens of either of the towns named. There was not, then, on June 14, 1867, a binding subscription of $75,000, as required by the terms of the contract in order to hold the defendants.

But it is said that subscriptions, sufficient with that of the defendants to make up the whole amount, were subsequently paid, and

thus the condition attached to them was waived, and it is claimed that this waiver relates back so as, in effect, to render the original subscription subject only to the same condition as that of the defendants, thereby fulfilling the condition upon which the defendants subscribed. It may be that the payment for stock is a waiver of all the unfulfilled conditions upon which that stock was taken. But one party cannot waive a right for another. If the citizenship of the subscribers had been waived before the expiration of the time allowed for taking the stock, it may be that defendants would have had no cause of complaint that such condition had been originally attached to the contract. But such waiver was after the expiration of that time. It was certainly competent for the parties to make time an element of the contract and they saw fit to do so. It was, therefore, binding upon them, and the other stockholders could not deprive these defendants of their right to insist, not only that the amount agreed upon should be obtained, but that it should be obtained within the time limited. Whatever might be the condition of the stock book subsequent to June 14, 1867, at that time the conditions, upon which the defendants subscribed, had not been fulfilled, their proposition to take stock had not been accepted, and they were released from any obligation which before that might have rested upon them. After such release their obligation could not be restored by any act of the other parties to the contract without their consent. It was not necessary that their subscription or proposition should be formally withdrawn, it ceased to have any vitality by its own limitation. As already seen, the acts of one of the defendants do not amount to a ratification of the assumed agency of the other, and for the same reasons they would not be a waiver of his right to have the condition of the alleged contract fulfilled, if such contract had been recognized by him. As to the other defendant no subsequent acts on his part are claimed as affecting his liability.

*Judgment for defendants.*

APPLETON, C. J., DICKERSON, BARROWS, and VIRGIN JJ., concurred.